UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KY USA ENERGY, INC., et al., | ) | CASE NO.: 10-11424(1)(11) |
| | ) | (JOINTLY ADMINISTERED) |
| | ) | |
| Debtors | ) | |
| | ) | |
| K & D ENERGY, et al. | ) | AP NO. 10-01049 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KY USA ENERGY, INC., et al. | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM-OPINION**

This matter is before the Court on the Motion for Partial Summary Judgment Regarding Counts VII and VIII of the Plaintiffs' Complaint filed by the Debtor, KY USA Energy, Inc. ("Debtor") and on the Plaintiffs' Cross Motion for Partial Summary Judgment Regarding Counts VII and VIII of the Plaintiffs' Complaint filed by Plaintiff, K & D Energy, a Kentucky partnership ("K & D") and individual Plaintiffs Michael Slinker and Kimberly Slinker, Randall Francis, Larry Grace, Billy Hunter and Wilma J. Hunter (collectively referred to herein as "Plaintiffs"). The Court reviewed the Motion and Supporting Memorandum of Law of the Debtor, the Memorandum of Law in Opposition to the Debtor's Motion for Partial Summary Judgment and supporting Affidavits, the

Reply of Debtor, the Plaintiffs' Sur Reply, Plaintiffs' Cross Motion for Partial Summary Judgment and the Response of the Debtor to the Cross Motion for Summary Judgment. For the following reasons, the Court will enter Partial Summary Judgment in favor of the Debtor dismissing Counts VII and VIII of the Plaintiffs' Complaint and deny the Plaintiffs' Cross Motion for Summary Judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 14, 2010, Debtor filed its Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code.

On October 26, 2010, Plaintiffs instituted this adversary proceeding with the filing of a Complaint and Petition for Declaration of Rights and Injunctive Relief Against Debtor and Defendant Hilltopper Energy, LLC. The individual Plaintiffs are landowners in Muhlenberg and Christian County, Kentucky. Each of the individual Plaintiffs entered into oil and gas leases granting certain oil and gas minerals and associated rights to the real estate to companies called Timberjacks, Inc. and Table Rock Petroleum, LLC. Timberjacks and Table Rock Petroleum ultimately conveyed and granted the rights in the real estate to Plaintiff K & D.

Each of the underlying oil and gas leases, which were ultimately assigned to Debtor, stated that the individual Plaintiffs would be paid a royalty for gas produced at a rate of "one-eighth, at the market price at the well for the gas so used, for the gas from each well where gas only is found."

On October 4, 2007, K & D entered into a Farmout Assignment with Debtor, that was supplemented on December 10, 2007 and corrected by a Farmout Assignment on June 1, 2008. Under the terms of the Farmout Assignment, K & D bargained, transferred and assigned to Debtor the oil and gas leases referred to above. Paragraph 7 of the Farmout Assignment states that K & D

"shall have the right to sell gas from any of its pre-existing gas wells on the project acreage, including the new Slinker #1 well, into the natural gas gathering line network that [KY USA Energy] will construct without being assessed any fees, including but not limited to transportation, compression or scrubbing of said gas." This provision applied to the wells then in existence.

Debtor invested substantial sums to drill, construct and develop gas wells on the individual Plaintiffs' properties pursuant to the Farmout Assignment. The gas produced by these wells contained nitrogen and other matter referred to as "inerts" which makes the gas unfit for use. In order to make the gas fit and marketable, it must be transported to a treatment facility and processed to removed the nitrogen and inerts.

Initially, Debtor negotiated with Atmos Energy to use their pipeline to sell the gas produced on the leases. For several reasons, Debtor could not reach an agreement with Atmos to transport and market the gas.

Debtor ultimately expended substantial capital to construct a natural gas gathering line network and pipeline system to transport the unmarketable gas produced by the wells to a treatment facility owned by Seminole Energy. The meter at each well measures the volume of gas produced as the gas enters the gathering system and pipeline. Seminole Energy then treats the gas to remove the nitrogen and inerts. It then purchases the gas from the Debtor at a specified rate based on the volume of gas.

Debtor calculates the one-eighth royalty payments to the individual Plaintiffs based on the payment it receives from Seminole Energy. The cost charged by Seminole Energy to treat the gas and make it marketable is passed on to the individual Plaintiffs *pro rata* based on the volume of gas

produced by the applicable wells. Debtor does this by deducting one-eighth of the expenses from the royalty payments to the individual Plaintiffs.

On October 26, 2010, the Plaintiffs initiated this adversary proceeding with the filing of their Complaint and Petition for Declaration of Rights and Injunctive Relief. In Court VII of the Complaint, Plaintiffs assert that the Farmout Assignment as supplemented and corrected between K & D Energy and Debtor, as well as the underlying oil and gas lease agreements, are plain and unambiguous. Plaintiffs contend that the royalty and override payments were required to be paid by Debtor without any reduction for expenses incurred by Debtor for the cost of drilling, production, gathering, distribution, cleaning/treatment, loss of gas to operate a third party treatment plant or any reduction in loss of volume after the gas leaves the meter. Plaintiffs contend Debtor breached the terms of the agreements by deducting such costs from the royalty payments. Plaintiffs contend that such breach results in forfeiture of the underlying oil and gas leases and constitutes conversion of the Plaintiffs' gas.

In Court VIII Plaintiffs contend that by deducting production costs from the gas produced and measured at the well meter, Debtor was unjustly enriched and request that the Court declare an equitable lien on all past and future payments for gas produced as well as on the equipment and trade fixtures of the Debtor. Plaintiffs also seek imposition of a constructive trust for the benefit of the Plaintiffs on all past, present and future proceeds for gas produced from any of the wells in which Debtor may have an interest.

## LEGAL ANALYSIS

The Court should render summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 made applicable in bankruptcy adversary proceedings in Rule 7056 of the Federal Rules of Bankruptcy Procedure. The burden on the moving party is discharged by a showing that there is an absence of evidence to support a non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Debtor has established that it is entitled to partial summary judgment on Counts VII and VIII of the Plaintiffs' Complaint as a matter of law and there are no genuine issues of material fact.

Plaintiffs contend in Counts VII and VIII of the Complaint that royalties should be based on the gross volume of gas produced without any deductions for production, distribution or treatment of the gas produced. They seek damages and imposition of equitable liens and a constructive trust on all of Debtor's wells for what it calls Debtor's "fraudulent" actions in deducting these costs from the royalty payments to the individual Plaintiffs.

The lease language at issue in each of the lease agreements states that the royalty is to be calculated using "the market price at the well for the gas so used." Debtor contends that the language used in the lease is interpreted under Kentucky law as calling for the royalty to be based on the price of the gas at the wellhead, which is the point at which the gas is converted from real property to personal property, citing Reed v. Hackworth, 287 S.W.2d 912 (Ky. 1956). Debtor contends that since the gas is not marketable at the wellhead, courts allow parties to calculate the wellhead value through the use of the "work-back" method under which the lessee deducts from the lessor's royalty reasonable expenses for transportation and marketing of gas produced from the

lessor's land.  See, e.g. Phillips Petroleum Co. v. Johnson, 155 F.2d 185 (5th Cir. 1946).  Under the "work-back" method, the "at-the-well" royalty is calculated as the downstream sales price minus the lessee's downstream costs and expenses.  Debtor initially relied on Cumberland Pipeline Co. v. Commonwealth, 15 S.W.2d 280 (Ky. 1929), in support of application of this rule in Kentucky.

Plaintiffs contend that under Kentucky law, Debtor was required to use the "market-product rule", rather than the "at-the-well rule" used by Debtor on allocating costs for the transportation and treatment of the gas.  Plaintiffs argue that there is an implied duty under Kentucky law on behalf of a lessee to market oil and gas from a lease and that the Plaintiffs should not be charged any costs for transportation, compression or treatment of the gas produced.  Plaintiffs contend that this so called "marketable product rule" is the majority opinion and followed by Kentucky courts.  In support of this contention, Plaintiffs cite Reed v. Hackworth, 287 S.W.2d 912 (Ky. 1956) and a Kentucky mineral law treatise, Short and Thomas, Kentucky Mineral Law, Vol. 1, Section 23.05, p. 42 (1987).

Plaintiffs urged this Court to refer this matter to the Kentucky Supreme Court for an ultimate determination as to how Kentucky state courts would rule on this issue.  Both parties cite cases from different jurisdictions claiming their rule is the rule followed by the majority of courts.  While the Court finds these cases helpful, the most definitive opinion on the issue was recently determined by a Kentucky court, an opinion that was affirmed by the Sixth Circuit Court of Appeals.  Poplar Creek Development Co. v. Chesapeake Appalachia, LLC, ___ F.3d ___, 2011 WL 535107 (6th Cir. February 17, 2011).

In the Poplar Creek case, the Sixth Circuit affirmed the Eastern District of Kentucky's holding that Kentucky follows the "at-the-well" rule which allows for the deduction of post-production costs before the payment of appropriate royalties.  The Court relied on an earlier case

decided by the Sixth Circuit pertaining to Kentucky law on gas leases similar to the one involved in Poplar Creek, LaFitte Co. v. United Fuel Gas Co., 284 F.2d 845 (6th Cir. 1960). There, the court reached two basic conclusions. Those were (1) that the lease was not ambiguous and (2) that the lease did not specify the place of market or the price to be paid. LaFitte, 284 F.2d at 848. In the case at bar, the Plaintiffs state in their Complaint, and Debtor does not dispute, that the terms of the leases are clear and unambiguous. The leases herein state that the royalty is to be calculated at the "market price at the well for the gas so used." Kentucky law requires that a contract between parties dealing in oil and gas is subject to the same rules of construction as any ordinary contract and courts will not undertake to rewrite a different contract or alter terms where the party's intent is clearly expressed. Oliver v. Louisville Gas & Elec. Co., 732 S.W.2d 509, 511 (Ky. Ct. App. 1987).

The Poplar Creek case clearly sets forth that the at-the-well rule is the appropriate rule to be applied by Kentucky courts. It cites Reed v. Hackworth, 287 S.W.2d 912 (Ky. 1956) and Cumberland Pipeline Company v. Commonwealth, 15 S.W.2d 280 (Ky. 1929), in support of its determination that a lessee under an oil and gas lease may properly deduct post-production expenses from a lessor's royalty payment. This Court finds that the Poplar Creek case is definitive on this issue and entitles the Debtor to summary judgment as a matter of law dismissing Counts VII and VIII of the Complaint. Debtor may deduct the Plaintiffs' proportionate share of reasonable post-production expenses from the gas royalty payments to the Plaintiffs.

Plaintiffs argue that the Debtor had an implied duty of marketability requiring it to bring the gas to a marketable product at its own expense. This issue was similarly argued in the Poplar Creek case and it was determined that the implied duty of marketability does not prohibit the reasonable costs of production of gas treatment from being passed along to a lessor or landowner.

Plaintiffs also go to great lengths in opposition to the Motion for Partial Summary Judgment and in its own Cross Motion for Summary Judgment to establish that the custom in the Pennyrile Region is to not deduct post-production costs from royalties. Plaintiffs filed numerous affidavits contending that the Debtor assured them that such costs would not be deducted from royalty payments prior to and during the negotiation of the leases. The Court has reviewed the affidavits but finds that they do not create genuine issues of material fact that warrant denial of summary judgment as a matter of law dismissing Counts VII and VIII from the Complaint.

The Court need not resort to extrinsic evidence to interpret a contract where its terms are unambiguous. Frear V. P.T.A. Industries, Inc., 103 S.W. 3d 99 (Ky. 2003); Martin v. Ben P. Eubank Lumber Co., 395 S.W.2d 385, 386 (Ky. 1965). Plaintiffs stated in their Complaint that the terms of the leases were clear and unambiguous. The royalties are to be paid at 1/8th "at the market price at-the-well for the gas so used, for the gas from each well where gas only is found." As explained above and recently reiterated by the Sixth Circuit Court of Appeals and the Eastern District of Kentucky in the Poplar Creek case, such terms allow the Debtor to deduct reasonable post-petition expenses from the Plaintiffs' royalty payments.

Finally, Plaintiffs contend that summary judgment is not appropriate on Counts VII and VIII based on the doctrine of estoppel. Debtor asserts that such a claim was never pled by the Plaintiffs in their Complaint. Regardless, estoppel cannot be used to vary the terms of a plain and unambiguous lease. Oral statements that may or may not have been made by the Debtor to Plaintiffs during negotiations for the leases cannot form the basis of an estoppel claim as the terms of the written contract supercede any such oral statements. Davis v. Siemens Medical Solutions USA, Inc., 399 F.Supp.2d 785, 795-96 (W.D. Ky. 2005) and Tractor and Farm Supply, Inc. v. Ford New

Holland, Inc., 898 F.Supp. 1198, 1205 (W.D. Ky. 1995).  The parol evidence rule bars evidence of oral statements or writings made prior to or contemporaneous with a written agreement that contradict, vary or alter the language appearing in the writing.  One cannot use parol evidence to create an ambiguity where no ambiguity exists.    Davis, 399 F.Supp.2d at 793, citing Luttrell v. Cooper Industries, Inc., 60 F.Supp.2d 629, 631 (E.D. Ky. 1998).

     The issues before the Court in the Debtor's Motion for Partial Summary Judgment and the Plaintiffs' Cross Motion for Summary Judgment regarding Counts VII and VIII have been fully briefed by both parties.  The Court has thoroughly reviewed the entire record and conducted its own research and finds that the Poplar Creek case is dispositive of the issues.  Kentucky follows the "at-the-well" rule which allows for the deduction of post-production costs before the payment of royalties on an oil and gas lease.  The Court finds that Kentucky *juris prudence* was followed in the Poplar Creek case and thoroughly analyzed by the District Court and the Sixth Circuit Court of Appeals.  There is no reason for this Court to certify this question and pass it on for a decision to the Kentucky Supreme Court, as the issue has been fully and finally decided in accordance with long standing Kentucky authority.  Accordingly, the Court will enter the attached Order granting the Debtor's Motion for Partial Summary Judgment dismissing Counts VII and VIII from the Complaint and overruling the Plaintiffs' Cross Motion for Summary Judgment.

## **CONCLUSION**

For all of the above reasons, the Court will **GRANT** the Motion for Partial Summary Judgment of Debtor KY USA and **DENY** the Cross Motion for Summary Judgment of the Plaintiffs regarding Counts VII and VIII of the Complaint.

# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KY USA ENERGY, INC., et al., | ) | CASE NO.: 10-11424(1)(11) |
| | ) | (JOINTLY ADMINISTERED) |
| | ) | |
| Debtors | ) | |
| | ) | |
| K & D ENERGY, et al., | ) | AP NO. 10-01049 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KY USA ENERGY, INC., et al, | ) | |
| | ) | |
| Defendants | ) | |

## **ORDER**

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED,** that the Motion for Partial Summary Judgment of Defendant/Debtor KY USA Energy, Inc., be and hereby is, **GRANTED**. There are no genuine issues of material fact and Debtor is entitled to judgment in its favor dismissing Counts VII and VIII as a matter of law.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED**, that the Cross Motion for Summary Judgment of Plaintiffs K & D Energy, et al., be and hereby is, **DENIED.**